IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-44-FL

| | |
|---|---|
| LARRY LAMB and ERNEST MATTHEWS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BLAKE WALLACE, *et al.*, | ) ) |
| Defendants. | ) ) |

**ORDER**

This matter is before the court on the Motion to Quash filed by the United States of America (Government) [DE #72], the motion having been referred by United States District Judge Louise W. Flanagan. Plaintiffs responded in opposition [DE #87], and the Government replied [DE #93]. On October 19, 2017, this court ordered Plaintiffs and the Government to submit supplemental briefing addressing whether final agency action had been taken by the Government [DE #94], and both the Government and Plaintiffs responded accordingly [DE ##95, 98]. The matter is now ripe for adjudication.

## BACKGROUND

Plaintiffs subpoenaed documents from the Federal Bureau of Investigation (FBI) and the United States Attorney's Office for the Eastern District of North Carolina (USAO) pursuant to Rule 45 of the Federal Rules of Civil Procedure in

relation to the above-captioned civil case. Additionally, Plaintiffs included information demonstrating their compliance with the applicable Department of Justice (DOJ) regulations codified at 28 C.F.R. §§ 16.21–16.29.[1] (Gov't Reply at 5 n.2.) The Government is not a party to the underlying civil action, which was filed in federal court and, among other things, alleges various violations of Plaintiffs' federal constitutional rights by local and state law enforcement officers.

## DISCUSSION

The Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*, authorizes judicial review of "final agency action." 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). In its supplemental brief, the Government concedes that it took final agency action when it issued its formal decision not to comply with Plaintiffs' subpoenas on May 10, 2017. (Gov't Suppl. Brief [DE #95] at 1.)

The Government moves to quash Plaintiffs' subpoenas on the ground that compliance would violate DOJ's *Touhy* regulations prohibiting disclosure of a confidential source or informant. *See* 28 C.F.R. §§ 16.24(b)(1), 16.26(b)(4). (Gov't Reply at 8.) In addition to the substantive issue regarding the motion to quash, the

---

[1] The FBI and USAO are part of the Department of Justice (Gov't Reply Mot. Quash (Gov't Reply) [DE #93] at 8). Thus, any request for testimony or documents from its employees regarding information obtained in the performance of their official duties is governed by the regulations set forth at 28 C.F.R. § 16.21 *et seq.* (*Touhy* regulations). *See United States ex rel. Touhy v Ragen*, 340 U.S. 462 (1951).

Government also argues there is a jurisdictional defect in the manner in which the issue has been raised. Specifically, the Government contends that Plaintiffs must initiate a collateral action against the Government under the APA to invoke the court's jurisdiction to review the Government's refusal to comply with the subpoenas. (Gov't Reply at 2–5; Gov't Suppl. Brief at 3–4.)

## I. Separate Action under APA Not Required

As a preliminary matter, the court determines that Plaintiffs are not required to file a separate action under the APA against the Government to vindicate their subpoenas. Sovereign immunity, upon which the Government relies, does not preclude the enforcement of Plaintiffs' subpoenas.

Whether a party seeking to enforce a subpoena against a non-party federal agency must institute a separate and independent action under the APA has previously been discussed by this and other courts. *See, e.g., Sauer Inc. v. Lexington Ins. Agency, Inc.*, No. 5:13-CV-180-F, 2014 WL 5580954, at *4 (E.D.N.C. Oct. 31, 2014); *Spence v. NCI Info. Sys.,* 530 F. Supp. 2d 739, 744 (D. Md. 2008). Analyzing the plain text of the relevant APA provisions, 5 U.S.C. §§ 702 & 703, the Second Circuit concluded that a "separate action for judicial review to compel compliance with a third-party subpoena addressed to the [federal] government" is not required when the underlying matter is already in federal court. *U.S. Envtl. Prot. Agency v. General Electric Co.*, 197 F.3d 592, 599 (2d Cir. 1999), *amended on rehearing*, 212 F.3d 689 (2d. Cir 2000). The textual analysis offered by the Second Circuit is persuasive, and the judicial efficiency concern noted in *General Electric* supports that

court's interpretation of the APA. *See Sauer*, 2014 WL 5580954, at *4, and *Spence*, 530 F. Supp. 2d at 744 (both endorsing *General Electric's* holding that a collateral APA action is not required when underlying lawsuit originated in federal court).

In support of its position, the Government cites the following Fourth Circuit cases, all of which emanated from state court or arbitration proceedings: *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 273–74 (4th Cir. 1999) (motion to compel federal agency employees to produce documents in response to an arbitrator-issued subpoena); *United States v. Williams*, 170 F.3d 431, 432–33 (4th Cir. 1999) (motion to compel FBI to produce documents in response to state-court subpoena related to state criminal proceeding); *Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998) (motion to compel federal prosecutors to testify in state criminal proceeding); *Boron Oil Co. v. Downie*, 873 F.2d 67, 67, 70 (4th Cir. 1989) (motion to compel federal agency employee to testify in state civil action). As the Government concedes (Gov't Reply at 3, 5) and as the court in *Spence* noted, the Fourth Circuit has not addressed this issue in the context of a non-party federal agency served with a subpoena pursuant to Federal Rule of Civil Procedure 45 as part of a case originating in federal court, *Spence*, 530 F. Supp. 2d at 744.

The Fourth Circuit cases cited above are all inapposite to the present issue because the sovereignty concern underlying those decisions is not present when the subpoenas stem from a proceeding initiated in federal court. In *Cromer*, the Fourth Circuit explained that sovereign immunity prevents a state court, and a federal court on removal jurisdiction pursuant to 28 U.S.C. § 1442, from enforcing a subpoena

against a federal official. *Cromer*, 159 F.3d at 879. *Cromer* also made clear, though, that its decision was premised on principles of federal supremacy. *See Cromer*, 159 F.3d at 880 ("These decisions [denying state court access to federal agency records], like our decision in *Boron v. Downie*, reflect the principle of federal supremacy in two ways: (1) by applying the doctrine of sovereign immunity to preclude state courts, or a federal court on removal, from reviewing federal agency action, and (2) by giving recognition to the principle that valid federal regulations have the force and effect of federal law, which state courts are bound to follow.").

That a collateral action is required when the subpoena emanates from a state court or a federal court that derives its authority, upon removal, from the state court is logical. Such courts lack authority, based on sovereign immunity, to review federal agency action. In that circumstance, a collateral action puts the federal agency's refusal to comply with subpoenas before a federal court, which has authority under the APA to order compliance with or quash the subpoenas. *See Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1276 (D. Colo. 2011) (noting that in *COMSAT* "[a] federal action had to be commenced to challenge the *Touhy* objection because there was no underlying federal action in which to bring a discovery motion").

"The APA waives the government's sovereign immunity from suit and permits federal court review of final agency actions." *COMSAT*, 190 F.3d at 274. Requiring Plaintiffs to initiate a collateral action would serve no purpose whatsoever, particularly in a district where the court's local rules would likely mean that the collateral action would be assigned to the same judge. *See Doan v. Bergeron*, No. 15-

5

CV-11725-IT, 2016 WL 5346936, at *2 (D. Mass. Sept. 23, 2016) (endorsing *General Electric's* rationale for collateral APA actions and noting that under local rules "any separate action would . . . be assigned to [the] court as a related case."); Local Civil Rule 40.3, E.D.N.C. (Dec. 1, 2017).

Here, the underlying matter originated in federal court, and therefore, sovereign immunity does not preclude this court from considering whether Plaintiffs' subpoenas should be enforced. Consistent with *Sauer* and *Spence*, and with no contrary Fourth Circuit precedent, the court adopts as its own the reasoning of *General Electric* – Plaintiffs need not initiate a collateral action to review the Government's refusal to comply with their subpoenas issued pursuant to Federal Rule of Civil Procedure 45 and in compliance with the applicable *Touhy* regulations.

II. Review under the Administrative Procedure Act

The Fourth Circuit has held that "[w]hen the government is not a party, the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas." *COMSAT*, 190 F.3d at 274. "The APA waives sovereign immunity and permits a federal court to order a non-party to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT*, 190 F.3d at 277. "A federal agency's decision is arbitrary and capricious for purposes of the APA 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise.'" *Sauer*, 2014 WL 5580954, at *4 (quoting *Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). "While [a reviewing court] may not supply a reasoned basis for the agency's action that the agency itself has not given, [the court] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (citations omitted).

A.     Factual Background

In February 1987, Leamon Grady was murdered at his home in Duplin County, North Carolina. Plaintiffs Lamb and Matthews, in addition to Levon "Bo" Jones, were convicted in state court of offenses related to Grady's murder. (First Am. Compl. [DE #41] at 6–11.) Plaintiff Lamb and Jones were convicted after trial; Plaintiff Matthews pleaded guilty to avoid a death sentence. (*Id.* at 10–11.) The State's key witness at Jones's and Lamb's trials was Ms. Lovely Lorden. (*Id.* at 10.)

All three men unsuccessfully appealed their convictions and subsequently filed state post-conviction proceedings. Jones also initiated federal habeas proceedings. In 2006, this court granted Jones's habeas petition on grounds of ineffective assistance of counsel and vacated his conviction. *Jones v. Lee*, No. 5:00-HC-238-BO, ECF No. 75 (E.D.N.C. Sept. 27, 2006). In August 2013, the late W. Douglas Parsons, North Carolina Senior Resident Superior Court Judge, granted Plaintiff Lamb's motion for appropriate relief (MAR) and vacated his conviction. (Ex. B to Pls.' Resp. Mot. Quash [DE #87-3].) In May 2016, Judge Parsons granted Plaintiff Matthews's MAR and

7

vacated his conviction. (Ex. C to Pls.' Resp. Mot. Quash [DE #87-4].) Each of these judicial orders vacating Jones's, Lamb's, and Matthews's respective convictions depended heavily on criticism of Lorden's credibility.[2]

In March 2016, Lamb filed the instant lawsuit (Compl. [DE #1]), to which Matthews was subsequently added as a plaintiff (First Am. Compl. at 1). At its core, the action alleges that certain local and state law enforcement officers violated Plaintiffs' constitutional rights through the "coaching" of Lorden as a witness in the underlying criminal prosecutions, and through the failure to disclose that Lorden had an extensive history as an informant for local, state, and federal law enforcement. Of particular relevance here, Plaintiffs assert violations of their Fifth Amendment right under *Brady v. Maryland* to material, exculpatory evidence during the trial phase of the state criminal proceedings (Pls.' Resp. Mot. Quash [DE #87] at 3) and a freestanding Fourteenth Amendment due process claim for failure to disclose material, exculpatory evidence regarding Lorden during post-conviction proceedings (Pls.' Resp. Suppl. Brief [DE #98] at 9).

Plaintiffs served the subpoenas at issue here pursuant to Rule 45 as part of the discovery process. Plaintiffs allege particular reason to believe that Lorden had worked as an informant for the FBI based on testimony from Attorney Ernest Conner during an evidentiary hearing in state court regarding Plaintiff Lamb's MAR (Ex. A to Pls.' Resp. Mot. Quash [DE #87-2] at 3) and based on Attorney Conner's testimony

---

[2] The state court orders vacating Plaintiffs' convictions detail the procedural history of Plaintiffs' various post-conviction proceedings. (*See* Exs. B & C to Pls.' Resp. Mot. Quash.)

8

and documents relating to an alleged undercover drug operation involving the FBI and local law enforcement in 2003 (Ex. D to Pls.' Resp. Mot. Quash [DE #87-5]). (Pls.' Resp. Mot. Quash at 9.)

When Plaintiffs served the instant subpoenas on the FBI and USAO, they included an Affidavit of Relevancy for the purpose of complying with DOJ's *Touhy* regulations. The Government does not dispute that Plaintiffs followed requisite *Touhy* protocol in their request for documents from the FBI and USAO. (Gov't Reply at 5 n.2.)

B. <u>Analysis</u>

The Government contends that Plaintiffs' request for documentary evidence in the FBI's and USAO's possession relating to Lovely Lorden runs afoul of valid regulations and that Plaintiffs offered "nothing compelling" in their request for documents. (Gov't Reply at 8–9.) The Government resists the subpoenas not because the identity of Lovely Lorden is confidential, but because the FBI has never admitted that Lorden worked as an informant *for it*. (Gov't Reply at 9.) Providing no further explanation and no reason particular to this or any other case, the Government contends that "positive disclosure of the identity of a confidential source by the FBI is an official action that carries with it material consequences beyond the litigation at hand." (Gov't Reply at 9.) The Government also resists the subpoenas on the ground that even if Lorden did work for the FBI as an informant after Plaintiffs' convictions, such evidence would not be relevant to Plaintiffs' *Brady*-based claim. (*Id.* at 10–12.)

9

In contrast, Plaintiffs contend the information they seek through their subpoenas is narrowly tailored; highly relevant and material to their lawsuit; and not burdensome to produce since they seek only documents. (Pls.' Resp. Mot. Quash at 10–12.) Plaintiffs also contend that the Government's reliance on 28 C.F.R. 16.26(b)(4) is misplaced because Lovely Lorden's identity as an informant is no longer confidential. (*Id.* at 8–10.) For the reasons explained below, the Government's argument is unsatisfactory. Its decision refusing to cooperate with Plaintiffs' subpoenas failed to consider important aspects of the dispute, runs counter to the evidence presented, and misapplies DOJ's *Touhy* regulations.

That Lovely Lorden served as an informant is widely known, though her identity as an *FBI* informant has never been confirmed. The Government maintains that even if an informant reveals her status as such, it remains free to refuse disclosure based upon departmental policy and DOJ *Touhy* regulations. (Gov't Reply at 9.) The Government has identified two reasons for its refusal to disclose the information sought by Plaintiffs' subpoenas. First, the Government contends that disclosure would violate the FBI's policy against revealing confidential sources. Second, the Government contends that 28 C.F.R. § 16.26(b)(4) prohibits disclosure of a confidential source or informant.

DOJ's *Touhy* "regulations are 'intended only to provide guidance for the internal operations of the Department of Justice, and [are] not intended to, and [do] not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States.'" *Cromer*, 159

F.3d at 880 (alterations in original) (quoting 28 C.F.R. § 16.21(d)). However, these internal regulations, promulgated under the federal "housekeeping statute," 5 U.S.C. § 301, also create no *substantive* rights in favor of the Government. There is no "independent privilege to withhold government information or shield federal employees from valid subpoenas" that arises from the regulations. *General Electric*, 197 F.3d at 598 (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir.1994)). Nor could there be, as § 301 expressly provides that it "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301; *see also Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) ("[N]either the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court.").

There is no doubt that a governmental privilege exists here. In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court recognized an executive privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro*, 353 U.S. at 59. "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* The privilege is not absolute, however; it ceases once the reason for it no longer exists. *Id.* at 60. "[O]nce the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Id.* "The

privilege must also give way when the informant or the contents of his communication 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'" *United States v. Smith*, 780 F.2d 1102, 1107 (4th Cir. 1985) (en banc) (quoting *Roviaro*, 353 U.S. at 60–61).

Here, the Government's interest in protecting the identity of its informant is significantly eroded. Lovely Lorden's identity as a confidential informant is widely known and has been discussed by both the state and federal courts. Even assuming Lorden's role as an FBI informant has never been confirmed or denied, the FBI has come as near as possible to making that revelation. In its own briefing, the Government states that it conducted a search for records responsive to Plaintiffs' subpoenas (Gov't Mem. Supp. Mot. Quash [DE #74] at 3–4) and, following that search, offered to issue a declaration stating that Lorden was not an FBI informant before 1993 (Gov't Reply at 11).[3] Plaintiffs refused this offer because they desired information through 2016, the year that Plaintiff Matthews's conviction was vacated. (Pls.' Resp. Suppl. Brief at 3.) The implication that Lorden worked as an informant for the Government after 1992 is nearly irresistible given the Government's willingness to declare that Lorden did not work for it before 1993; the Government's

---

[3] The Government has not moved to seal this filing. It has redacted Lorden's name from the subpoena and accompanying affidavit of relevancy and never mentions Lorden by name throughout its filings. However, Lorden's identity as an informant for law enforcement in the Grady case—and others, generally—is public knowledge. *See, e.g.,* Shaila Dewan, *Executions Resume, as Do Questions of Fairness*, N.Y. Times, May 7, 2008, at A1; *Larry Lamb: A Free Man*, North Carolina Center on Actual Innocence, https://www.nccai.org/larry-lamb/ (last visited Feb. 1, 2018).

unwillingness to make such a declaration regarding years 1993 through 2016; and the publicity surrounding Lorden's status as an informant for law enforcement.

The Government's argument about the relevancy of the subpoenaed materials is unavailing. Plaintiffs have asserted a freestanding Fourteenth Amendment due process claim based on Defendants' failure to disclose information regarding Lorden's informant status during the post-conviction proceedings.[4] (*See* Pls.' Resp. Suppl. Brief at 9.) If Lorden had been an informant for the FBI during that period and Defendants were aware of that fact and failed to disclose it, that information would be relevant to Plaintiffs' claim. Indeed, given the credibility concerns regarding Lorden and her relationship with the defendant law enforcement officers, the most potent and reliable evidence of Lorden's alleged work as an FBI informant would be evidence procured from the FBI. And Lorden's status as an informant for law enforcement—local, state, or federal—may also be relevant to her credibility and bias as a witness were she to testify at trial or deposition. Therefore, the Government's argument that the subpoenaed information is irrelevant to Plaintiff's claims is without merit.

Furthermore, the agency's position that compliance with Plaintiffs' subpoena is prohibited because it would reveal a confidential source is at odds with DOJ's *Touhy* regulations. Subsection (c) of 28 C.F.R. § 16.26 provides, in part:

---

[4] Plaintiffs have alleged that Defendants deprived them "of their constitutional rights to a fair trial *and fair legal process*." (First Am. Compl. at 13, ¶ 73 (emphasis added).) And Plaintiffs specifically identify Lorden as providing live testimony in Jones's habeas proceedings and in Plaintiff Lamb's MAR hearing, in addition to affidavits submitted post-conviction. (Pls.' Resp. Mot. Quash at 12.)

13

> The Deputy or Associate Attorney General will not approve disclosure if any of the conditions in paragraphs (b)(4) through (b)(6) of [§ 16.26] exist, unless the Deputy or Associate Attorney General determines that the administration of justice requires disclosure. In this regard, if disclosure is necessary to pursue a civil or criminal prosecution or affirmative relief, such as an injunction, consideration shall be given to:
>
> (1) The seriousness of the violation or crime involved;
>
> (2) The past history or criminal record of the violator or accused,
>
> (3) The importance of the relief sought,
>
> (4) The importance of the legal issues presented,
>
> (5) Other matters brought to the attention of the Deputy or Associate Attorney General.

28 C.F.R. § 16.26(c). The Government sets out in detail its application of paragraph (b)(4) to justify its noncompliance with Plaintiffs' subpoena but fails to provide any explanation of this apparently relevant[5] subsection of the same regulation or whether the agency considered any of the factors in subsection (c) in determining whether the administration of justice required disclosure. (Gov't Reply at 6–8.)

Next, Plaintiffs' request is narrowly tailored and not particularly burdensome. First, Plaintiffs have only requested documents, and not the testimony of any FBI or USAO employee. *Cf. Boron Oil*, 873 F.2d at 71–72 (discussing burden of compelling federal officers to testify in court). Second, Plaintiffs have requested a narrow class of documents. This is not an open-ended fishing expedition. *Cf. Johnson v. Folino*, 528 F. Supp. 2d 548, 552 (E.D. Pa. 2007) (rejecting as "a fishing expedition" habeas

---

[5] *See Prosecute* and *Prosecution*, *Black's Law Dictionary* (6th ed. 1990); *The Brazil*, 134 F.2d 929, 931 (7th Cir. 1943) (defining 'prosecution' to include "commencing, conducting and carrying a suit to a conclusion in a court of justice").

petitioner's request to compel FBI to divulge redacted names in memorandum FBI produced in response to Rule 45 subpoena). Moreover, the FBI has already conducted the search for records that Plaintiffs seek. (Gov't Mem. Supp. Mot. Quash at 3–4.)

Plaintiffs have alleged a constitutional violation of great magnitude: that local and state law enforcement contrived to fabricate evidence, obstruct justice, and suborn perjury so that Plaintiffs would be convicted for a murder they did not commit, and then continued to conceal that wrongdoing while Plaintiffs sat in prison. Moreover, the posture of the case is unique in that Plaintiffs' underlying criminal convictions have been vacated based primarily on the dubious credibility of the informant about whom they seek more information. The Government's briefing in support of its motion to quash indicates the agency's decision was reached upon a misapplication of its regulations, runs contrary to the evidence before it, and failed to consider important aspects of the problem, namely the seriousness of the action Plaintiffs have brought, the posture of that action, and the relevance to that lawsuit of the information sought from the Government. The agency's refusal to comply with Plaintiffs' subpoena was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and the Government's motion to quash is, therefore, denied.

Bearing in mind, however, the Government's concern about potential consequences of disclosure as it pertains to other matters and that the information sought by Plaintiffs may contain information that is subject to the Privacy Act, 5 U.S.C. § 552a, a protective order limiting Plaintiffs' disclosure of any information

provided pursuant to the subpoena may be appropriate. As the parties are in a superior position to fashion the terms of such an order, the court instructs the parties to confer concerning the need for and terms of a protective order.

## CONCLUSION

For the reasons explained above, the court hereby DENIES the Government's Motion to Quash [DE #72].

The court hereby DIRECTS the parties to meet and confer, *in person or by telephone*, in an effort to reach an agreement concerning the terms of a protective order, if appropriate. The parties shall jointly submit, within twenty-one (21) days of this order, a motion and proposed protective order or notice informing the court of the parties' respective positions with regard to a protective order.

This 12th day of February 2018.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge